I'll proceed to the fourth case, the United States v. Castetter. Mr. Thiel. Good morning, Your Honor. Counsel, may it please the Court. The issue before the Court today is whether the United States government may use a warrant issued by a magistrate in one state to search a premises in another state through the use of GPS monitoring. Mr. Castetter argues that the answer is no and that his ruling on his motion to suppress and motion to dismiss should be reversed. The main issue with both the District Court's conclusion and the United States' position on appeal is that it proceeds in a world where cats was the last word on Fourth Amendment jurisprudence. That is, they analyze only whether there was a reasonable expectation of privacy and not whether Mr. Castetter Counsel, there was a warrant in this case, so knots and similar cases about whether there needs to be a warrant really fall away. There was a warrant. Your brief says essentially, well, let's just disregard the warrant because it was issued by a judge in another state. That's correct, Your Honor. What part of the Fourth Amendment forbids judges in one state to issue warrants that will be executed in another state? No part of the Fourth Amendment, Your Honor. Right. So you're relying on state law, right? No. So you think the state law in the state where the warrant was issued doesn't allow the warrant to be implemented in another state? Well, that's certainly true, but that's not the extent of the argument. That's what your brief says, but that raises the question why state law would ever lead to the exclusion of evidence. The Supreme Court held in Virginia against Moore that a violation of state law is irrelevant to suppression in federal court. So why would it matter whether the state judge was exceeding powers under state law in issuing a multi-state warrant? It's ultimately a 14th Amendment issue, not necessarily an issue of state law. That is, does Indiana have the right to monitor the search of both the people that live in its state as well as the property that lives in its state or is its sovereignty degraded to such a point that Michigan can, in fact, do that? And I would say there's a startlingly small amount of jurisprudence on this case. I believe the two cases that Mr. Kastner cited. Well, you've got a further problem then. If you're basically asking us to make up a brand new rule, you can't explain why the exclusionary rule would apply. Well, as I understand it, the government does not contest whether the exclusionary rule applies. The government has not addressed that in their appeal brief and they certainly Because it doesn't think there's any brand new rule involved. I don't believe that we're asking for a brand new rule. I mean, ultimately, this goes back, I think, to what we all read in law school. I mean, this is as old as Pennoyer v. Neff. This goes to basic issues of 14th Amendment federalism. That is, are the states sort of sovereign in and amongst themselves in the context of our federal system? I just don't see what any of this has to do with anything. You're not making a 10th Amendment argument that this warrant infringes on the rights of some other state. The argument has to be that a search justified by this warrant infringes on your client's personal rights. And the difficulty with that is that that looks like you're urging us to implement some state law rule. And Virginia v. Moore says we don't use the exclusionary rule to do that. I don't think that's correct at all. I don't understand. I mean, we are not pointing to any particular state code, either in Michigan or Indiana, for our support in basically ruling that this warrant cannot cross state lines. I would point to the fact that, as the government points out, a federal warrant, explicitly by federal law, can cross state lines, such that there is a federal mechanism. Which is also irrelevant to the Fourth Amendment. The Fourth Amendment is what it is. It's not added to by statutes, and it's not subtracted from by statutes. And, in fact, the Supreme Court has said that violation of a federal statute is not a basis for suppression of evidence unless the federal statute itself provides for suppression.  Again, I would first go back. Again, I think there is an argument in such that this has been waived for the purposes of appeal, certainly. There is the problem here where the government, never before the district court, argued that the warrant could be valid across state lines. It just doesn't matter. Anything that would make it invalid would be a principle of state law, because there's no federal statute that does this. And that just doesn't lead to exclusion. We're not going to disagree with the Supreme Court's opinion in Virginia against Moore. Again, I don't believe that this is an issue of state law. Respectfully, Your Honor, this would be similar to the issuance of an in rem judgment by one state court against property that existed in another state. We simply wouldn't, under the principles of federalism, permit this sort of thing to happen. It goes against, I mean, you can look at the minimum context cases that we've cited, which certainly aren't directly appealable. No, I'm totally lost. In rem judgments are binding against the world, not only because of authority over the wreaths, but also because of the full faith in credit clause. That's true. State A can't disagree with a judgment entered by State B. That's an important constitutional principle. No, but State A can also not issue a judgment against property that is located in State B. And that's, that goes to the essence of what we're arguing here, which is that what, and this goes to the only two cases. I hate to quote from Katz, but the Fourth Amendment doesn't protect property, it protects persons. Well, except that, again, though, as we learn later in Jones and in Forta v. Jardines, though, Katz is simply an addition to and not a supplement for the Fourth Amendment. The Fourth Amendment protects people's persons' homes, affects papers. This is, indeed, a protection of Mr. Kafstetter's home. This is not an issue of State law. I mean, there is, again, there is no State law in either Michigan or Indiana which applies here. Indeed, the only two cases that have been cited by either parties which specifically address this issue are Ex parte Dillon and State v. Jones. And both of those cases expressly stand for the proposition that one State cannot, a magistrate in one State cannot issue a search warrant for property that is in another State. Sotomayor, do we have a no-warrant situation or do we have an impaired warrant? It was our position that we have, for the purposes of Indiana, a no-warrant situation. That is, that there was no effort made for a Indiana, to seek a warrant from an Indiana magistrate. And I think that's particularly problematic in this case for two reasons. One, I think the reason that they did not do that was because of the information that they had, which was ultimately faulty. The information that the Michigan authorities had was that there was an, it was that Mr. Holst, who owned the car, was going halfway to Chicago in order to get his methamphetamine. It's actually the, that would take him through Michigan. Mr. Kafstetter's residence is actually in the opposite direction. It's closer to halfway to Cleveland than it is halfway to Chicago. So I don't believe they ever thought they were going to need an Indiana warrant. But to the extent that they thought that they were going to, to the extent that they thought that this was interstate drug transportation, that's why you go to the federal court. And that's why you avail yourself of the federal GPS statute, which expressly provides that so long as the GPS device is installed in the district where the warrant is in the nation, you cannot simply rely on. Why does that same theory work with the warrant issued in Michigan? I'm sorry, Your Honor. Why doesn't it work with a Michigan warrant then? Because they didn't, because it's not a federal warrant. Why not? No, you described it because then it's, if it's valid there, you can do it anyplace, right? If this were a federal warrant. Again, I think the other. Well, what's the difference? Well, the difficulty is it's a factual situation that doesn't exist here. For instance, if Mr. Kastetter lived in Michigan, we also wouldn't have a problem here because we wouldn't have an argument about the validity of the warrant. There are any number of factual scenarios which would make what the government did in this case perfectly acceptable. But what they cannot do and what the government didn't even argue to the district court was that they can simply go to a Michigan magistrate and seek a warrant that is valid, I assume nationwide, if not even further than that. Again, there are only two cases in the United States that either party has found which address this issue and both fall on Mr. Kastetter's side. Mr. Teel, should we look at this possibly through the prism of a good faith situation? Let's say there's a search and we have a warrant that fails because it talks about the third floor rather than the second floor or Mr. J. Jones versus Mr. M. Jones, the whole range of impaired warrants, as I call them. Certainly. Could this possibly fall under a good faith exception? I think that the answer is no, and that's because this was not a technicality of the kind that Your Honor is describing. This was not simply, as in the people versus Fiorillo case, that the government decided where it's issued in one county and it's executed in another. These are two different sovereign states within the context of our federal system. This is not a situation where there could be any confusion about where that warrant was valid. It was issued by a Michigan magistrate. It was valid in Michigan. It was not valid in Indiana. I see my time has expired. Well, the question is, was it a valid warrant? Under federal law, was anything done to obtain that warrant that was not proper? And if it was a proper warrant, why can't it be used anywhere? I know because you said it's federal. Sure. Again, I think this goes back to the argument that this is a 14th Amendment issue, Your Honor. This is an issue where Indiana has a sovereign right, and this is what both I think the ex parte Dillon and ultimately State versus Jones found, which is, and even going back to Pennoyer, Worldwide, Volkswagen, International Shoe, which is that each state has a sovereign right to adjudicate the laws of its state and the laws against its citizens. At the point where we allow basically a district court magistrate in a foreign state to impede the rights of members of another state, we have not only enlarged the powers of that Michigan magistrate, but we have, in fact, decreased the powers of the Indiana magistrate such that they no longer have exclusive authority over the people and the premises within the state. Thank you, Your Honors. Thank you, Mr. Thiel. Mr. Howell. Good morning, Your Honors, and may it please the Court. The warrant in this case was valid at minimum for Fourth Amendment purposes. It also, I think, was valid for Fourteenth Amendment purposes, federalism purposes, Indiana law, and Michigan law. But all that really matters here is that it was valid for Fourth Amendment purposes. And the reality is that there is nothing about anything that happened here that was unreasonable under a Katz theory, under a Jones theory, or under any Fourth Amendment theory of which the government is aware. Michigan authorities in the St. Joseph County, Michigan, applied for and granted a warrant to track a car in compliance with CARO, in compliance with 3117, in compliance with anything that can possibly be involved in Fourth Amendment. And my opponent has conceded that if the car then went to the house of some other, you know, person in Michigan and parked in their driveway and the GPS was monitored, there would be no Fourth Amendment problems. And there equally are no Fourth Amendment problems if instead what happened here is the Michigan authorities sitting in Michigan continue to monitor that car as it drives instead to Noble County, Indiana, and parks in Mr. Kastetter's driveway. There's no Fourth Amendment problem with any of this. Then the Michigan authorities, sitting in Michigan, monitoring through, you know, I mean, the GPS information comes basically to the officer's phone and tells him where the car is. They say, hey, the car's at Noble County, Indiana. Hey, the car's back at Noble County, Indiana. And they don't drive to Noble County, Indiana, and without a warrant, invade Mr. Kastetter's home. They call Noble County, Indiana. Now, presumably, if there was some provision of Indiana law where Indiana felt that there was some big objection to Michigan authorities using GPS pursuant to a valid warrant to monitor an Indiana citizen, the Indiana County officials would say, hey, we've got a big problem with this. You get out of our state. But instead they say, thank you very much. Let's take this information and let's put it in a valid Indiana warrant and let's go search Mr. Kastetter's house because we don't want drug dealers in our state. So that's what happened here. So there was a valid Michigan warrant. There was a valid Indiana warrant. Nobody in the state of Michigan or the state of Indiana seems to be complaining about this, so I don't think that there are any comedy or federalism issues. Your Honor, we did preserve the good faith argument to the extent it matters, and we don't think it matters because we think the warrant is clearly valid. You know, my opponent wants to say that because a 1930 intermediate decision in Missouri and a 2009 intermediate state court decision in Ohio have suggested in decisions that, to my mind, rely primarily on state law that the Fourth Amendment might be implicated, at least in the Ohio case in an instance where Ohio law itself was valid. I don't think that has any relevance here. The Fourth Amendment was complied with. The warrant was valid. At any rate, we also think the district court was correct that even if there was some issue with the warrant, all that we learned from the information was that there was a car parked in Mr. Kastetter's driveway, which a nosy driving along the streets of Noble County, Indiana, could have seen. We don't think there's anything wrong with that anyway under Knotts and Carrow. If the court has no questions, we would stand on our brief and ask that the judgment be affirmed. Thank you, Mr. Holler. Mr. Thiele, your time has expired, but you may have two minutes. Just to briefly address the argument that these are the intermediate state court cases, that's true. It's also true to say they are the only cases that address this particular point. And to address the government's argument that this Ohio case, in fact the most recent 2009 State v. Jacob, is based primarily on Ohio law, it's contradictory to the actual terms, words I should say, of the opinion. Because it cites Justice Holmes in Silverthorne Lumber v. United States for the premise of its very holding. This is a Fourth Amendment case. It is premised upon United States Supreme Court law. It did not rise and fall upon the vagaries of Ohio law. With respect to the search issue, again, this is a case where Mr. Castaner's home, the curtilage of his home, has been invaded and has been invaded for nearly two hours over the course of two different searches. This is not a scenario where the government came, knocked on the door and left, or simply encroached upon the driveway for a very brief period of time. In fact, it took up shop there for a half an hour one time, an hour and a half the second time, and used that position to track when Mr. Holst was in Mr. Castaner's home at a particular time, which is precisely what Caro says is unconstitutional. Thank you, Your Honor. All right. Thank you, Mr. Teel. Thank you, Mr. Holler. Case is taken under advisement. Court will proceed to the fifth.